## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 19-CR-149-G** |
| | ) | |
| **WILSON LEONEL GRAMAJO-** | ) | |
| **MALDONADO,** | ) | |
| a/k/a Amner J. Pineda-Areyano, | ) | |
| a/k/a Wilson Barrios-Maldonado, | ) | |
| a/k/a Nilson Barrios-Maldonado, | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

TIMOTHY J. DOWNING
United States Attorney


*s/K. McKenzie Anderson*
Assistant U.S. Attorney
Oklahoma Bar No. 30471
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8781(Office)
(405) 553-8888 (Fax)
McKenzie.Anderson@usdoj.gov

## Table of Contents

**Page**

BACKGROUND ............................................................................................. 2

I.     The USSG Section 2A3.1 Cross Reference and Certain Specific Offense
       Characteristics Are Correctly Applied in the PSR .................................... 3

       A. USSG Section 2A3.1 Applies to Count 1 and Count 1A
          by Cross Reference ............................................................... 3

       B. Evidence of Physical Violence Supports the Enhancement for Forcible
          Rapes Pursuant to USSG Section 2A3.1(b)(1) .................................... 7

II.    Three Additional Specific Offense Characteristics Should Be Added to
       the Guidelines Calculation ...................................................... 10

       A. USSG Section 2A3.1 Requires Consideration of Relevant Conduct of the
          Offense of Conviction – Child Sex Trafficking................................. 10

       B. A Preponderance of Evidence Supports the Section 2A3.1 Specific
          Offense Enhancements of (b)(3), (b)(4), and (b)(5) for Doe 2 ................. 13

III.   A Vulnerable Victim Enhancement Applies to Doe 2 ........................... 18

IV.    Mr. Gramajo Knew Doe 2 was 14 ....................................... 20

V.     A Preponderance of Evidence Shows Mr. Gramajo Possessed Firearms ............. 20

VI.    A Preponderance of the Evidence Shows Mr. Gramajo Attempted to
       Produce Child Pornography with a 13-year-old Female on Facebook and
       Sent her Obscene Materials ................................................... 21

CONCLUSION .......................................................................... 23

i

**Table of Authorities**

**Page**

**Federal Cases**

*Fults v. Qualls*,
  635 F. App'x 316 (6th Cir. 2016) ............................................................... 18

*United States v. Balfany*,
  965 F.2d 575 (8th Cir.1992) ..................................................................... 15

*United States v. Bell*,
  367 F.3d 452 (5th Cir. 2004) .................................................................... 15

*United States v. Browning*,
  61 F.3d 752 (10th Cir. 1995) ...................................................................... 1

*United States v. Chasenah*,
  23 F.3d 337 (10th Cir. 1994) ................................................................... 14

*United States v. Checora*,
  175 F.3d 782 (10th Cir. 1999) ................................................................. 19

*United States v. Cook*,
  550 F.3d 1292 (10th Cir. 2008) ................................................................. 1

*United States v. Janis*,
  71 F.3d 308 (8th Cir.1995)........................................................................ 18

*United States v. Jim*,
  877 F. Supp. 2d 1018 (D.N.M. 2012),
  *aff'd and remanded*, 786 F.3d 802 (10th Cir. 2015)..................................... 15

*United States v. Lambright*,
  320 F.3d 517 (5th Cir. 2003) ................................................................... 19

*United States v. LaVallee*,
  439 F.3d 670 (10th Cir. 2006) ................................................................. 19

*United States v. Lockhart*,
    844 F.3d 501 (5th Cir. 2016) ................................................................. 9

*United States v. Merritt*,
    982 F.2d 305 (8th Cir. 1992) ................................................................. 15

*United States v. Pavao*,
    948 F.2d 74 (1st Cir. 1991) ................................................................. 12

*United States v. Ritsema*,
    31 F.3d 559 (7th Cir. 1994) ................................................................. 11

*United v. Romero*,
    293 F.3d 1120 (9th Cir. 2002) ................................................................. 12

*United States v. Saknikent*,
    30 F.3d 1012 (8th Cir. 1994) ................................................................. 17

*United States v. Scott*,
    434 F. App'x 103 (3d Cir. 2011) ................................................ 9, 11, 18, 19

*United States v. Swank*,
    676 F.3d 919 (9th Cir. 2012) ................................................................. 15

*United States v. Tapia*,
    59 F.3d 1137 (11th Cir. 1995) ................................................................. 19

## Federal Statutes

8 U.S.C. § 1326(a) ................................................................................... 2

18 U.S.C. § 1591 ................................................................................... 2

18 U.S.C. § 2241 ................................................................................... 3

18 U.S.C. § 2242 ................................................................................... 3

18 U.S.C. § 3509(d) ................................................................................... 1

iii

18 U.S.C. § 3553(a) ..................................................................................................... 2

18 U.S.C. § 3661 ......................................................................................................... 1

## Federal Rules

FED. R. EVID. 1101(d)(3) ............................................................................................ 1

USSG § 2A1.3 ............................................................................................................. 3

USSG § 2A3.1 ................................................................................................... *passim*

USSG § 2A4.1 ........................................................................................................... 14

USSG § 6A1.3(a) ......................................................................................................... 1

USSG § 1B1.3 ..................................................................................................... 10, 12

USSG § 1B1.5 ............................................................................................................. 3

USSG § 2G1.3 ............................................................................................................. 3

## Other

Black's Law Dictionary 644 (6th ed. 1990) ............................................................... 17

Webster's Seventh New Collegiate Dictionary (1970) ............................................... 17

## THE UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this Sentencing Memorandum to aid the Court in resolving certain contested issues related to Defendant Wilson Gramajo-Maldonado's sentencing. The United States has made certain objections to the Presentence Report ("PSR"), which are contained in the addendum to the PSR. (Doc. 55 at 27-28.) The Defendant also submitted objections. (*Id.* at 29-33.) The United States intends to prove the disputed facts.

Sentencing enhancements need only be proven by a preponderance of the evidence. *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008). There is "no limitation" on the evidence the Court may consider for sentencing, 18 U.S.C. § 3661, which includes information that would have otherwise been inadmissible at trial so long as it has "some minimal indicia of reliability." *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995) (hearsay statements allowed); FED. R. EVID. 1101(d)(3); USSG § 6A1.3(a). Documentary evidence such as an officer's affidavit and police reports have been found sufficient to prove facts by a preponderance of the evidence. *Cook*, 550 F.3d at 1295. Accordingly, the United States is filing sealed exhibits to the Court for its consideration at sentencing, most of which will be filed conventionally, pursuant to 18 U.S.C. § 3509(d) and the Protective Order in this case (Doc. 23), as they contain personal identifiers and child victim information.

However, even if certain cross references and enhancements are not applied pursuant to the Guidelines, the underlying facts relate to the nature and circumstances of Mr. Gramajo's offense of conviction, the history and characteristics of Mr. Gramajo, and the need to protect the public, and should be considered by the Court pursuant to 18 U.S.C. § 3553(a).  Mr. Gramajo represents the extreme end of the spectrum in terms of severity of his conduct, and the United States supports a sentence exceeding 360 months, based on the application of the Guidelines and the Section 3553(a) factors, to account for aggravating circumstances and extreme conduct.

## BACKGROUND

On May 2, 2019, Mr. Gramajo was charged by Complaint with illegal reentry, in violation of 8 U.S.C. § 1326(a).  (Doc. 1.)  On May 21, 2019, Mr. Gramajo was charged by Indictment with four counts, alleging sexual exploitation of a child, transfer of obscene matter to a minor, alien in possession of a firearm, and illegal reentry.  (Doc. 14.) On August 26, 2019, Mr. Gramajo was charged by Superseding Information with child sex trafficking of Jane Doe 1 and Jane Doe 2,[1] in violation of 18 U.S.C. § 1591(a)(1) and (b)(2).  (Doc. 34.)  On August 28, 2019, Mr. Gramajo appeared in person and entered a plea of guilty to the Superseding Information, pursuant to a Plea Agreement.  (Docs. 37, 40.)

---

[1]     Consistent with the Protective Order (Doc. 23), the United States has used these pseudonyms throughout this Sentencing Memorandum.

The Final Presentence Investigation Report ("PSR") was filed on March 25, 2020. (Doc. 55.)  It includes certain objections raised by the United States, namely: 1) whether three specific offense enhancements apply after the cross reference to 2A1.3 is applied; and 2) whether Jane Doe 2's mental health condition qualifies for a vulnerable victim enhancement.  Mr. Gramajo also makes numerous objections to facts laid out in the PSR. This Sentencing Memorandum will address these categories in turn.

I.    **THE USSG § 2A3.1 CROSS REFERENCE AND CERTAIN SPECIFIC OFFENSE CHARACTERISTICS ARE CORRECTLY APPLIED IN THE PSR.**

The PSR correctly applies a cross reference to USSG § 2A3.1 for both Counts 1 and 1A, with three specific offense enhancements.  (Doc. 55 at ¶¶ 39-47, 51-59.)  The United States supports application of the cross reference and enhancements, and provides the legal support and factual support for their application.

A.    **USSG § 2A3.1 Applies to Count 1 and Pseudo-Count 1A by Cross Reference.**

The PSR correctly recommends that both Counts 1 and 1A require application of a cross reference to USSG § 2A3.1.  Mr. Gramajo objects, but his objection is without merit.

USSG § 2G1.3 provides the guideline applicable to the offense of conviction: child sex trafficking.  Section 2G1.3(c)(3) states that "If the offense involved conduct described in 18 U.S.C. § 2241 or § 2242, apply § 2A3.1 . . . if the resulting offense level is greater than that determined above."  Section 1B1.5(a) provides guidance on this

3

situation: "A cross reference (an instruction to apply another offense guideline) refers to the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special instructions)." In other words, the cross reference does not just import a different base offense level, but requires application of the related specific offense characteristics.

The PSR correctly applies the cross reference to § 2A3.1 because Mr. Gramajo raped Doe 1 and Doe 2, as described in more detail below. Mr. Gramajo objects to the application of the § 2A3.1 cross reference for both victims, identified as Doe 2 and Doe 1 in Count 1 and Pseudo-Count 1A, respectively. (Doc. 55 at 31.) He admits to having sex with Doe 2, but "denies ever forcing [Doe 2] to have sex against [her] will." (*Id.*) Mr. Gramajo denies "ever engaging in sexual intercourse with [Doe 1]. (*Id.* at 33.) The PSR also correctly applies three specific offense characteristics, for forcible rape, pursuant to § 2A3.1(b)(1) (Doc. 55 at ¶¶ 41, 53), for Does 1 and 2 being between 12 and 16 years of age, pursuant to § 2A3.1(b)(2) (*id.* at ¶¶ 42, 54), and for computer use, pursuant to § 2A3.1(b)(6)(B) (*id.* at ¶¶ 43, 55).

   *1.* *Mr. Gramajo Raped Doe 2.*

Doe 2 consistently and credibly described Mr. Gramajo raping her, i.e. having sex with her without her consent. Mr. Gramajo objects. (Doc. 55 at ¶¶ 24, 41.) In the first forensic interview of Doe 2, she describes Mr. Gramajo forcing sex on her. (*See* Exh. 1 (video clip).) When asked about sex with Mr. Gramajo, Doe 2 volunteers "sometimes he

4

would force me." (*Id.*)  She says he forced her multiple times.  She also describes a common occurrence:  she would tell him she did not want to have sex, and then she would fall asleep, only to be woken up by him having sex with her anyway.  On the contrary, she said when he didn't feel like sex, she left him alone.  She said she didn't want to tell him no, because she knew he would do it anyway.  In her descriptions, she says it happened at the trailer, where he also lived for months, and when her mother was there in her own bedroom.

2.    *Mr. Gramajo Raped Doe 1.*

Doe 1 credibly and repeatedly describes Mr. Gramajo raping her when she was intoxicated, after she had about half a bottle of vodka.  Mr. Gramajo objects. (Doc. 55 at ¶¶ 26, 30, 48-63.)  In her first forensic interview, Doe 1 describes the incident twice. (Exhs. 2, 3 (video clips).)  Unlike most of the interview and her talkative and frank demeanor in discussing commercial sex with other men, she is incredibly quiet when describing what happened on this particular occasion with Mr. Gramajo.  The second time it is discussed, Doe 1 says she eventually gave in because he would not have listened to her saying no.  In the second forensic interview, she says the incident happened at his house, when she was drunk and could "barely walk."  (Exh. 4 (video clip).)  Doe 1 describes telling Mr. Gramajo no repeatedly, pushing his hand away, and trying to pull her pants up, but she explains that he is "pushy."  Doe 1 says that if she had

5

continued to say no and push his hand away, she thinks he "would have kept doing the same thing."[2]

Excerpts from Mr. Gramajo's Facebook account, contained in Exhibit 14, undermine Mr. Gramajo's denials of sex with Doe 1.  On April 22, 2018 at 3:31 a.m. in local time, Mr. Gramajo wrote to Halbert:  "I want to be with a woman."  (Exh. 14 at HALBERT_026192.)  Over an hour later, he wrote, "I want to stay to sleep with [Doe 1] in your house."  (*Id.*)  Mr. Gramajo also sends messages to Doe 1, telling her, "I wanted to be with you."  (*Id.* at HALBERT_030186.)  Doe 1 says, "No you wanted to be with my sister," and Mr. Gramajo responds, "yes I would like to be with a woman."  (*Id.*)  Later that day, Mr. Gramajo repeatedly sends messages to Doe 1, telling her he wants to "spend a good time smoking and having sex," that he wants sex with her ("quiero sexo contigo"), and that he can drive to her trailer and they can "stay in [his] truck."  (*Id.* at HALBERT_30185.)  Doe 1 tells Mr. Gramajo that she doesn't "want to panic in front of [him] again," indicating this is not the first time she has had sex with Mr. Gramajo. Nevertheless, Doe 1 indicates she is willing on this occasion.  Mr. Gramajo tells Doe 1 that he has a condom, and Doe 1 says she will ask Halbert for permission.  Mr. Gramajo and Doe 1 speak by phone via Facebook at about 4:47 a.m.  (*Id.* at HALBERT_030184.)

---

[2]     In her August 2019 interview with law enforcement, Halbert said Doe 1 had reported to her on one occasion that Mr. Gramajo had raped Doe 1 at his house, but she said Doe 1 had recanted when Halbert went to confront Mr. Gramajo.

At about 5:28 a.m., Mr. Gramajo sends a pornographic .gif file to Doe 1, showing a man performing oral sex on a naked female.  (*Id.*)

A week later, on April 29, 2018, after 1 a.m. local time, Mr. Gramajo writes to Halbert:  "I want to have sex with the sister [of Doe 1]."  (*Id.* at HALBERT_26192.) About seven minutes later, he writes, "And [Doe 1] I want sex."  (*Id.* at HALBERT_026191.)  At about 11 p.m. that night, local time, Mr. Gramajo receives a message from Halbert:  "Where is [Doe 1] is she ok[?]"  (*Id.*)  Mr. Gramajo says Doe 1 isn't with him, and Halbert asks, "Well where is she[?]" and says she is calling the police. (*Id.*) Mr. Gramajo denies having the girls at his house.  A few minutes later Halbert says, "You kidnapped them . . . They left with u then u should have brought them back."[3]  (*Id.* at HALBERT_26190.)  Mr. Gramajo's phone contained numerous photographs of Does 1 and 2, together and apart.  Further, Exhibit 31 shows Halbert admitted Mr. Gramajo had sex with Doe 1 at least twice and provided alcohol to Halbert in exchange. (Exh. 31 (Report of August 12, 2019 Interview); Doc. 55 at ¶ 30.)

Exhibits 1-4 and 31 establish, by a preponderance of the evidence, that Mr. Gramajo raped both Doe 1 and Doe 2, and the cross reference thus should apply to both Count 1 and Pseudo-Count 1A.

**B.  Evidence of Physical Violence Supports the Evidence of Forcible Rapes, Triggering Enhancement of USSG § 2A3.1(b)(1).**

---

[3]     This is not the gasoline/abduction incident described elsewhere, which occurred in December 2018.

The enhancement for use of force during the rapes should be applied, based on the facts described above. Further, there is substantial evidence that Mr. Gramajo was physically violent with Doe 2 throughout their relationship and was also violent toward Doe 1 and Halbert. Mr. Gramajo objects. (Doc. 55 at ¶¶ 23, 24, 27.) Doe 2 describes Mr. Gramajo's physical abuse in her first interview. (Exh. 5 (video clip).) She describes it again in her second forensic interview. (Exh. 6 (video clip).) Her descriptions include incidents where Mr. Gramajo held a knife to her throat and threatened to kill her, hit her eyes, and busted her lip. (*See* Doc. 55 at ¶ 24.) In the second interview, Doe 2 also describes Mr. Gramajo possessing a firearm and brandishing it toward others. Doe 1, in her first forensic interview, also describes Mr. Gramajo's physical abuse of Doe 2. (Exhs. 7, 8 (video clips).)

Does 1 and 2 had younger siblings who also witnessed and described Mr. Gramajo's physical violence toward Doe 2. A 9-year-old younger sister describes Mr. Gramajo hurting Doe 2 in her forensic interview. (Exhs. 9, 10 (video clips).) An 11-year-old younger sister describes Mr. Gramajo hurting Doe 2 in her forensic interview. (Exhs. 11, 12 (video clips).) The younger 12-year-old brother reports witnessing the abuse as well. (Exh. 13 (video clip submitted under seal).)

In Exhibit 7, Doe 1 also explains that Mr. Gramajo punched her, and she describes his firearm. On November 6, 2018, at approximately 7:53 pm local time, Halbert sent a message to Mr. Gramajo asking him, "Why the f*ck did you hit [Doe 1] in her stomach I

8

promise you to god and in my dead son grave you put your hands on [Doe 1] or [Doe 2] again ever you will have immediately problems ..."  (Exh. 14 at HALBERT_026171.) The physical violence Mr. Gramajo exerted over Doe 2 and Doe 1 helps explain and support their description of his rapes:  Both Doe 1 and Doe 2 knew Mr. Gramajo to be dangerous, physically violent, and unrelenting. *See United States v. Scott*, 434 F. App'x 103, 106 (3d Cir. 2011) (affirming application of § 2A3.1 cross reference based on defendant "routinely forc[ing the victims] to continue prostituting by creating an environment of fear and dependence through the use of threats of violence, actual violence, and various forms of manipulation against them").

Courts have applied the 2A3.1(b)(1) enhancement based on violence used during a period of sex trafficking to force additional commercial sex, and Mr. Gramajo's violence otherwise supports the enhancement under the cross reference. *See United States v. Lockhart*, 844 F.3d 501, 517 (5th Cir. 2016) (relying on incidents of force that "placed her in fear that she would be subjected to serious bodily injury," and on "beatings and the fear of future harm" for enhancements pursuant to cross-referenced § 2A3.1 for sex trafficking conviction).  The specific offense enhancement for forcible rape is appropriate here too, based on the facts above.  *See* USSG § 2A3.1(b)(1).[4]

---

[4]     Mr. Gramajo does not specifically challenge—factually or otherwise—the application of the enhancements for Does 1 and 2 being between 12 and 16 years of age, pursuant to § 2A3.1(b)(2) (*id.* at ¶¶ 42, 54), and for computer use, pursuant to § 2A3.1(b)(6)(B) (*id.* at ¶¶ 43, 55), as he communicated with Halbert and the victims using cell phones to demand sex and arrange payments.

Thus, the PSR correctly assigns, at a minimum, an offense level of 38 for Counts 1 and Pseudo-Count 1A.

## II.     THREE ADDITIONAL SPECIFIC OFFENSE CHARACTERISTICS SHOULD BE ADDED TO THE GUIDELINES CALCULATION.

### A.     Section 2A3.1 Requires Consideration of Relevant Conduct of the Offense of Conviction—Child Sex Trafficking.

Three additional enhancements should apply when the Court considers relevant conduct in connection with the offense of conviction:  Sections 2A3.1(b)(3), (4), and (5). (Doc. 55 at 27-28.)  The PSR writer claims that "[b]ecause the enhancements sought by the government fall under the cross-reference to § 2A3.1, the relevant conduct analysis must be framed in terms of the forcible sex offense against [Jane Doe 2] being treated as the offense of conviction," arguing that the enhancements only apply if they occurred during the rape, in preparing for the rape, or in an attempt to avoid detection for the rape. (Doc. 55 at 28.)  Respectfully, that is incorrect.

Relevant conduct is defined in USSG § 1B1.3 by the charged offense, not the specific conduct triggering a cross reference.  Relevant conduct is that which "occurred during the commission of ***the offense of conviction***, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  USSG § 1B1.3(a)(1) (emphasis added).  Notably, the Guidelines do not alter the definition of relevant conduct when a cross reference applies:  relevant conduct is still defined under Section 1B1.3(a)(1), based on "the offense of conviction."  There is no direction in the

Guidelines or the application notes that "the offense of conviction" is to be "framed" as conduct triggering a cross reference, and the PSR writer cites no authority for that position.

The rationale for the Guidelines' use of cross references and relevant conduct explains why relevant conduct does not change, even with the application of a cross reference. The relevant conduct provision is the Guidelines' main vehicle for "introducing real-offense principles into what is predominantly a charge-offense sentencing system. The goal of including relevant conduct in sentencing is to allow a court to reflect in its sentence the actual seriousness of an offense, instead of strictly limiting it to the charge the prosecutor names in the indictment." *United States v. Ritsema*, 31 F.3d 559, 564–65 (7th Cir. 1994) (internal citations omitted). Because the purpose of "relevant conduct" is to expand the scope of conduct for sentencing, it would be illogical to artificially restrict the relevant conduct after the application of a cross reference. It would also strangely limit the Court's consideration to a "charge offense" that even the prosecution did not charge, as opposed to the real offense and all of its components.

Indeed, courts have applied specific offense enhancements based on relevant conduct to the offense of conviction (sex trafficking-related offenses), even when otherwise applying the § 2A3.1 cross reference. *See, e.g.*, *Scott*, 434 F. App'x at 106-07 (affirming enhancements based on underlying charged offense). This is also true in other

11

contexts.  Applying a cross reference for fraud and deceit, for example, would not reflect the "full extent of the wrongfulness" of a defendant's conduct, without also applying enhancements for impersonation of a federal officer, the offense of conviction, even though a separate guideline for impersonation had led to the cross reference.  *United v. Romero,* 293 F.3d 1120, 1125 (9th Cir. 2002) (affirming enhancements under cross reference based on facts assumed within the offense of conviction, as relevant conduct under § 1B1.3).  The Guidelines "specifically instruct the court to consider not just the 'offense of conviction,' but 'all acts and omissions committed ... during the commission of ***the offense of conviction' when it applies 'cross-references*** in Chapter Two."  *Id.* (quoting *United States v. Pavao,* 948 F.2d 74, 77 (1st Cir. 1991)) (emphasis added).  A cross reference is thus not a mutually exclusive alternative to the guideline normally applicable to the offense of conviction—rather, it is a way to capture the "real conduct that underlies the offense of conviction," including relevant conduct to the offense of conviction.  *Id.*

The relevant conduct here should include, at a minimum, the charged time period of June 2018 through January 18, 2019, and should be framed based on the offense of child sex trafficking—the offense of conviction—even when applying cross references. Relevant conduct should not artificially be restricted to the moments before and after certain forcible rapes of Does 1 and 2, when Mr. Gramajo has pleaded guilty to a broader pattern of child sex trafficking and violence toward those two victims.

12

**B.     A Preponderance of Evidence Supports the USSG 2A3.1 Specific Offense Enhancements of (b)(3), (b)(4), and (b)(5) for Doe 2.**

*1.     Mr. Gramajo Exercised Care and Supervisory Control Over Doe 2.*

As described in the PSR (at 27), there is a preponderance of evidence that Mr. Gramajo exercised custody, care, or supervisory control over Doe 2, requiring the USSG § 2A3.1(b)(3) enhancement.  (*See also* Doc. 55 at ¶ 21.)  The PSR writer did not consider the enhancement based only on its timing:  "unless additional facts are developed as to the timing of Gramajo sexually assaulting [Doe 2]," the custody/control and abduction enhancements "cannot be applied." (Doc. 55 at 28.)  However, the care/custody/control enhancement should apply because Mr. Gramajo exercised care/custody/control over Doe 2 during the offense of conviction, even if the forcible rapes happened only when they lived in the trailer with Halbert.

Mr. Gramajo's taking of Doe 2 for approximately a month should result in the enhancement when the relevant conduct includes the offense of conviction.  Doe 2, Doe 1, and their 11-year-old younger sister all describe Mr. Gramajo taking Doe 2 away in their forensic interviews.  (Exhs. 15-17 (video clips).)  Further, Halbert describes Mr. Gramajo taking Doe 2 away in her interviews with law enforcement on the day she was arrested.  (Exhs. 18-21 (audio clips).)  Halbert says the incident involving gasoline and the truck, when Mr. Gramajo took away Doe 2, happened before Christmas 2018, and that they were gone for approximately a month.  Based on text messages on the device shared by Halbert and Doe 1, it appears the incident likely happened on December 16,

13

2018, within the time of the offense of conviction.  (Exh. 22 (repeated text messages after "Wilson disrespect me" stating "Emergency" and "911").)  Halbert was arrested on January 19, 2019, and she claims Doe 2 and Mr. Gramajo had returned to the trailer about a week before then.  Indeed, on December 19, 2018, Halbert sends Mr. Gramajo a Facebook message from someone else's account, saying, "Wilson its natalie u need bring [Doe 2] home asap its kidnap charges."  (Exh. 23 (Excerpt of Mr. Gramajo's Facebook at HALBERT_026274.)  Mr. Gramajo then sends Doe 2's father and Doe 2 numerous messages around January 23, 2019, asking about Doe 2. (*Id.* at HALBERT_029350-57.)  Thus it appears Mr. Gramajo and Doe 2 were away from approximately December 16, 2018, until approximately January 12, 2019, qualifying as temporary custody over Doe 2 sufficient to support the enhancement of § 2A4.1(b)(3).

In any event, being the other adult residing in the trailer, and one who provided food and resources and money to the home, Mr. Gramajo certainly qualified for the role of caregiver requiring imposition of the enhancement.[5]  "[T]he focus of the guideline falls upon anyone who, for the purpose of abusive sexual contact, abuses even peripheral or transitory custody, care, or supervisory control of the victim."  *United States v. Chasenah*, 23 F.3d 337, 339 (10th Cir. 1994) (exclusive or primary custody not required for enhancement); *United States v. Swank*, 676 F.3d 919, 924 (9th Cir. 2012) ("being the other adult that was residing in that home, had not only the right but the responsibility to

---

[5]     This role could arguably support the enhancement for Doe 1, too.

14

exercise that type of control for [the victim's] care."); *United States v. Merritt*, 982 F.2d 305, 307 (8th Cir. 1992) (residing with victim's grandmother led to enhancement); *United States v. Balfany,* 965 F.2d 575, 585 (8th Cir.1992) (finding enhancement applied when defendant lived with victim's mother in same house as victim and was left alone with victim).

> 2. *Mr. Gramajo Caused Serious Bodily Injuries to Doe 2.*

Mr. Gramajo caused serious bodily injuries to Doe 2 from the beatings and tattoos he gave her.  The PSR writer argues that only serious bodily injuries from the forcible rape itself, or immediately before, should be considered.  However, courts have gone the opposite direction.  For example, in *United States v. Jim*, 877 F. Supp. 2d 1018, 1040 (D.N.M. 2012), *aff'd and remanded*, 786 F.3d 802 (10th Cir. 2015), the Court rejected the enhancement specifically because the injuries had been the result of the sexual abuse, not from additional misconduct toward the victim.

Indeed, USSG § 2A3.1 Application Note 1 explains that the term "serious bodily injury" for that section "means conduct other than criminal sexual abuse, which already is taken into account in the base offense level."  Thus evidence of Doe 2 suffering a laceration of her lip and swollen eyes from Mr. Gramajo's beatings supports the application of this enhancement.  *See United States v. Bell*, 367 F.3d 452, 470 (5th Cir. 2004) (finding evidence that victim's face was swollen was sufficient for serious bodily injury enhancement of 2A3.1(b)(4)).  Mr. Gramajo also tattooed Doe 2 in various places,

including her fingers, and he photographed those tattoos.  Those permanent tattoos

further constitute serious bodily injuries, as they can only be removed surgically.

>    3.    *Mr. Gramajo Abducted Doe 2.*

Mr. Gramajo took Doe 2 away after pouring gasoline on the truck Halbert was

sitting and smoking a cigarette inside of, and that should result in an enhancement for

abduction pursuant to USSG § 2A3.1(b)(5).  Mr. Gramajo denies this happened.  (Doc.

55 at ¶ 21.)  As the children and Halbert describe the incident, Halbert was angry at Mr.

Gramajo for not paying his usual $40 (to live with and have sex with Doe 2) after he had

been paid at his job, and he decided to leave the trailer with Doe 2.[6]  (Exhs. 15-17 (video

clips); 18-21 (audio clips); 31 (report of subsequent Halbert interview).)  As he was

packing, Halbert told Mr. Gramajo he could not take Doe 2 with him.  She sat smoking a

cigarette in the truck, and Gramajo approached and poured two containers of gasoline on

the truck, while she was inside, and Mr. Gramajo said he would burn down everything.

Halbert, afraid, acquiesced to let Doe 2 go with Mr. Gramajo.  Doe 2 said Mr. Gramajo

was always trying to keep her from her family, and she told him she chose him over her

family because she was afraid:  she believed that if she had told Mr. Gramajo that she

wanted to leave him and go back to her family, he would have hit her in the face.  (Exh.

15.) In other words, Mr. Gramajo took Doe 2 away by credibly threatening violence

---

[6]    This price was the same price Halbert typically charged other men for sex with
Does 1 and 2.

against her and her family; contrary to the PSR writer's description (Doc. 55 at 28), it was "actually against [Doe 2's] will."

Mr. Gramajo's conduct constitutes abduction and requires application of 2A3.1(b)(5).  Even if the "willingness" of the victim was obtained by threats to the parent, it nevertheless constitutes abduction.  *See United States v. Saknikent*, 30 F.3d 1012, 1014 (8th Cir. 1994) ("[F]orced" does not necessarily imply a physical assault. To "force" means to compel "by physical, moral, or intellectual means," or "to impose" or "to win one's way." Webster's Seventh New Collegiate Dictionary 326 (1970). "Force" can also mean "constraining power, compulsion; strength directed to an end." Black's Law Dictionary 644 (6th ed. 1990).")  Moreover, it is certainly abduction when a child is lured away by an adult with candy or a puppy, even without fraud, because the child is not an adult and cannot consent.  Similarly, Doe 2 lacked the capacity to consent to leaving with Mr. Gramajo, and he took her away with violent threats and actions. The purpose of the abduction enhancement supports its application here.  "Abduction increases the gravity of sexual assault or other crimes because the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed." *Saknikent,* 30 F.3d at 1013. Fourteen-year-old Doe 2 was kept away from her mother, whom she had always taken comfort in being in the room next door, without a phone or any other means of seeking help, and she was left alone with a violent abuser.

17

III.    **A VULNERABLE VICTIM ENHANCEMENT APPLIES TO DOE 2.**

A vulnerable victim enhancement should apply for Doe 2, if not also Doe 1.  Other courts have affirmed the application of a vulnerable victim enhancement based on a victim's diagnosis of ADHD and the defendant's knowledge of that vulnerability.  *See, e.g., United States v. Janis,* 71 F.3d 308, 311 (8th Cir.1995) (holding that the perpetrator who lived with the victim knew or should have known of her vulnerability given their regular contact and the victim's history of ADHD, FAS, and learning disabilities); *Fults v. Qualls*, 635 F. App'x 316, 322 (6th Cir. 2016) (affirming vulnerable victim enhancement under state law in habeas case).

Doe 2 was vulnerable because she had a cognitive or mental health condition sufficient to qualify for Social Security income.  (Doc. 55 at 28.)   But it was more than that; Doe 2 was also particularly vulnerable because of her circumstances.  Contrary to the PSR writer's analysis, the fact that Doe 2 was in "an environment in which . . . acts of prostitution were normalized in the household, and there were frequent visits at the household from men who desired to engage the services of prostitutes" is further evidence of vulnerability, not evidence that Doe 2 was a normal child with typical resources and faculties.  Mr. Gramajo preyed upon two girls from "troubled circumstances," including a "severely unstable famil[y]."  *See, e.g*., *Scott*, 434 F. App'x at 107.  Doe 2 also had a "cognitive impairment" and/or "a psychological disorder."  *Id.*

18

"These conditions were not incidental to the victimization." *Id.* As in *Scott*, the vulnerable victim enhancement should apply in these circumstances.

Doe 1 and Doe 2 were particularly impoverished, living in squalor in a trailer that was not connected to the sewage system, surrounded by narcotics, alcohol, prostitution, and violence, and completely dependent on Halbert, who was unemployed. Mr. Gramajo then abused them both. This is analogous to cases in which inmates dependent on the care of correctional officers are deemed vulnerable victims for purposes of this enhancement. *See United States v. Tapia*, 59 F.3d 1137, 1143 (11th Cir. 1995); *United States v. Lambright*, 320 F.3d 517, 518-19 (5th Cir. 2003); *see also United States v. LaVallee*, 439 F.3d 670, 704 (10th Cir. 2006) (citing with approval *United States v. Lambright*).

It is immaterial whether Mr. Gramajo intentionally targeted Doe 2 because of her vulnerability. *United States v. Checora*, 175 F.3d 782, 789 n.4 (10th Cir. 1999) ("The argument is frivolous. We have already stated on several occasions that section 3A1.1(b) does not require a finding that the defendant intentionally targeted the victim because of the victim's vulnerability."). There is no but-for causation requirement for the selection of the victim—what matters is whether Defendant knew the victim was vulnerable. Here, Mr. Gramajo knew Doe 2 was vulnerable for all the reasons discussed above, and he nonetheless exploited her.

19

## IV.    MR. GRAMAJO KNEW DOE 2 WAS 14.

Mr. Gramajo objects to the fact recited in the PSR that he knew Doe 2 was 14.  (Doc. 55 at 29-30, ¶ 24.)  That fact does not affect the calculation of the Guidelines for Mr. Gramajo.  Nevertheless, the United States hereby provides excerpts of forensic interviews demonstrating Mr. Gramajo knew Doe 2's actual age.  (Exhs. 24, 25, 26.)  Doe 1 explained that Halbert told Gramajo that Doe 2 was only 14 when reprimanding him as he beat Doe 2.  (Exh. 24.)  According to Doe 1, Mr. Gramajo ignored what Halbert said and kept hitting Doe 2.  Doe 2 also admitted Mr. Gramajo knew she was 14 and said he said he did not care.  (Exhs. 25, 26.)  Doe 2 said she felt like that meant he really loved her.   Mr. Gramajo's Facebook messages with a 13-year-old female make clear he was interested in young girls.  (Exh. 27.)  She asked, "Do you like it young?" and Mr. Gramajo responded, "Yes bby," after she had told him she was 13 years old.  (*Id.* at HALBERT_027261-62.)

## V.    A PREPONDERANCE OF EVIDENCE SHOWS GRAMAJO POSSESSED FIREARMS.

Mr. Gramajo objects to the fact recited in the PSR that he possessed a firearm.  (Doc. 55 at ¶ 27, p. 33 at ¶ 70.)  That fact does not affect the calculation of the Guidelines for Mr. Gramajo.  Nevertheless, the United States hereby submits the Facebook messages, which show Mr. Gramajo tried to sell a .380 caliber revolver and ammunition on Facebook on December 12, 2017, using first person to indicate he personally was selling the firearm—"I cannot do less than 180."  (*See* Exh. 28 at HALBERT_026488 ("Lo menos que puedo 180").)  He described it:  "These leave no trace." (*Id.* ("Estas no dejan rastro").)  On

20

December 17, 2017, the other individual asked, "Do you still have it?" (*Id.* ("Todavia la tienes").)  Mr. Gramajo responded, "Not anymore, sorry bro." (*Id.* ("Ya no, sorry bro").)  The other individual responded with cursing.  (*Id.* at HALBERT_026487.)  Within the same thread, Mr. Gramajo provided a phone number with area code 323 and mentioned traveling to Oklahoma.

Mr. Gramajo was the individual operating his Facebook account at all relevant times. (*See* Exh. 29 (containing messages with Mr. Gramajo's name and phone number, profile pictures of Mr. Gramajo, and other identifiers).)  In other messages, Mr. Gramajo receives photos and information about a different firearm in September 2017.  (Exh. 28 at HALBERT_027199-7203.)  Further, Doe 1, Doe 2, and Halbert all consistently described a firearm Mr. Gramajo possessed, which he kept in the center console of his white Infinity.  (Exhs. 6, 7, 31.)  Doe 2 says Mr. Gramajo pointed the firearm others when Doe 2 was with him, and that he also employed knives in his violence toward Doe 2.  (Exh. 6.)

## VI.   A PREPONDERANCE OF THE EVIDENCE SHOWS MR. GRAMAJO ATTEMPTED TO PRODUCE CHILD PORNOGRAPHY WITH A 13-YEAR-OLD FEMALE ON FACEBOOK AND SENT HER OBSCENE MATERIALS.

Paragraph 68 of the PSR summarizes evidence that Mr. Gramajo engaged in explicit messages with a 13-year-old female on Facebook.  The messages, photos, and .gif files that were exchanged between the 13-year-old female and Mr. Gramajo on July 29, 2017, are contained in Exhibit 27.  Mr. Gramajo objects and claims that his "cell phone was accessed by a third party who sent the" materials to "the alleged underage girl."  (Doc. 55 at 33.)

21

There is no evidence that anyone other than Mr. Gramajo possessed his cell phone or accessed his Facebook account.  In fact, his messages with the 13-year-old bear striking resemblances to his communications with Halbert and Does 1 and 2.  For example, Halbert reported that she believed Mr. Gramajo was 22, because that is what he falsely told her.  (Exh. 30.)  Similarly, Mr. Gramajo falsely told the 13-year-old that he was 22.  Mr. Gramajo sent a pornographic .gif file to Doe 1 on Facebook.  (Exh. 14 at HALBERT_030184.)  Similarly, he sent two pornographic .gif files to the 13-year-old on Facebook.  (Exh. 27 at 27265, 27270.)

Contrary to Mr. Gramajo's assertion, there is overwhelming evidence that Mr. Gramajo exclusively operated his Facebook account, including messages and photos documenting his identity.  From May 2017 until July 2018, Mr. Gramajo frequently posts profile pictures and timeline photos of himself.  (Exh. 29.)  In a conversation on July 28, 2017, until July 29, 2017, the same date he communicates with the 13-year-old girl, Mr. Gramajo identifies himself as "Wilson" and gives the same phone number he uses elsewhere in messages to others.  (*Id.* at HALBERT_027181-186.)  In sentencing Mr. Gramajo, the Court should consider his efforts to seek out at least one other young victim on the internet, his admission that he liked young girls, and his aggressive pursuit of the child, whom he sent pornographic materials.

22

## CONCLUSION

Mr. Gramajo's conduct falls at the extreme end of the spectrum with respect to abuse of children.  His sentence should reflect the gravity of his crimes and should exceed 360 months in prison, with a lifetime of supervised release.

Respectfully submitted,

TIMOTHY J. DOWNING
United States Attorney

*s/K. McKenzie Anderson*
Assistant U.S. Attorney
Oklahoma Bar No. 30471
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8781 (Office)
(405) 553-8888 (Fax)
McKenzie.Anderson@usdoj.gov

## Certificate of Service

I hereby certify that on April 8, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Elliott Crawford, counsel for Defendant Wilson Gramajo-Maldonado
Alyssa Farrell, guardian ad litem for Doe 2
LeAnne Burnett, guardian ad litem for Doe 1

*s/ K. McKenzie Anderson*
Assistant U.S. Attorney

23